**In re DOAN'S TRUCK REPAIR, INC., a Wyoming corporation, Debtor.**

**Bankruptcy No. 83–00258.**

United States Bankruptcy Court, D. Wyoming.

Sept. 19, 1983.

Noel S. Hyde of Nielsen & Senior, Salt Lake City, Utah, for debtor.

Robert H. Johnson, Rock Springs, Wyo., for First Sec.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD L. MAI, Bankruptcy Judge.

Based upon the verified application for order to show cause filed herein by the above-named debtor, an order to appear and show cause was served upon First Security Bank of Rock Springs, a secured creditor herein, on August 2, 1983. Said order to appear and show cause came on for hearing before the undersigned at the United States Bankruptcy Court in Cheyenne Wyoming, on August 25, 1983. Having considered the testimony of witnesses and arguments of counsel, and being fully advised in the premises, the court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

This court does find as follows:

1. Leon J. Doan, Jr. filed an individual voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on April 5, 1983, with the debtor as a debtor-in-possession.

2. Doan's Truck Repair, Inc., a Wyoming corporation, filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on April 28, 1983, with the debtor as a debtor-in-possession, which case was subsequently converted to a case under Chapter 7 of the United States Bankruptcy Code on July 18, 1983.

3. Leon J. Doan, Jr. and Doan's Truck Repair, Inc., are two separate and distinct entities.

4. At the time of the filing of his voluntary petition on April 5, 1983, Leon J. Doan, Jr. was the owner of certain real property located at 1616 West Second Street, Rock Springs, Wyoming (hereinafter referred to as the "business property"), said business property being subject to a first mortgage in favor of First Security in the amount of $403,140.94.

5. From and after April 5, 1983, and at all times relevant hereto, Doan's Truck Repair, Inc. was a tenant at sufferance in said business property pursuant to an oral lease agreement with Leon J. Doan, Jr.

6. On April 13, 1983, First Security filed an application to modify stay with respect to its interest in the business property in the individual case of Leon J. Doan, Jr.

7. Following a hearing on June 2, 1983, to consider First Security's application to modify stay, an order was entered on June 16, 1983 granting the relief requested in the individual case of Leon J. Doan, Jr.

8. On June 29, 1983, First Security conducted a foreclosure sale of its interest in the business property and purchased said property at the sale.

9. Between June 29, 1983 and July 7, 1983, First Security, through its officers and agents, took possession and control of the building in which Doan's Truck Repair, Inc., the above-named debtor, was conducting its business under the jurisdiction and control of the bankruptcy court. On June

**182**

29, First Security installed new locks on the gate and the front door of the building. Debtor was not given a key to the locks. A 24-hour security guard was stationed on the premises commencing June 29, who logged all persons and vehicles entering and leaving the premises. Even debtor's customers could not remove their property without permission of the bank. Debtor and its customers could only have access to the business premises with the consent of the bank. Even with consent the premises were accessible only during the hours the bank was open, which excluded evenings, weekends, and holidays. The bank prevented removal from the premises, without permission of the bank, parts and vehicles which were owned by debtor and its customers. The bank refused to allow debtor to use its wrecker truck or testing equipment off of the premises. The bank was a secured creditor, but had not requested or obtained modification of the stay until after July 7, 1983. On one occasion the bank authorized another secured creditor to remove a lathe from the premises. That secured creditor had not requested or received modification of the automatic stay. On July 4, 1983, debtor was ordered to vacate the premises. The last time debtor was on the premises was July 7, 1983. No relief from automatic stay had been requested or received for such action.

10. The effects of the acts of First Security between June 29, 1983 and July 7, 1983, in limiting the debtor's access to the business property and controlling the debtor's use of equipment and other property located thereon, were to dispossess the debtor from the business premises and to force the cessation of regular business being conducted by the debtor.

11. The acts undertaken by First Security between June 29, 1983 and July 7, 1983, with respect to the interests of the above-named debtor in the business property and equipment located thereon, were undertaken without prior request to or approval of this Court.

12. From and after June 29, 1983, the debtor incurred the following reasonable and necessary expenses, which would not have been incurred but for the acts of First Security as described in paragraphs 9 and 10 above:

|  |  |  |
|---|---|---|
| (a) | Telephone service deposit | $ 450.00 |
| (b) | Telephone line connection fee | 300.00 |
| (c) | Forklift rental | 549.12 |
| (d) | Truck rental | 1,408.08 |
| (e) | Packaging materials (boxes) | 283.92 |
| (f) | Additional laborers to assist in moving | 2,500.00 |
| (g) | Diverted employees-- | |
| | (1) Joann Brennan | 750.00 |
| | (2) Elaine Corinne | 1,005.00 |
| | (3) Russ Losier | 1,380.00 |
| | (4) Leon J. Doan, Jr. | 2,100.00 |
| | (5) Ron Cash | 160.00 |
| | | $10,886.12 |

13. From and after June 29, 1983, the debtor has incurred the following expenses for attorneys' fees and costs in pursuing the present action:

|  |  |  |
|---|---|---|
| (a) | Noel S. Hyde, Nielsen & Senior, travel and lodging costs | $ 249.83 |
| (b) | Noel S. Hyde, Nielsen & Senior, Attorney's Fees (18.1 hours at $45 per hour) | 814.50 |
| (c) | Ken McCartney, attorney's fees (.5 hours at $90 per hour) | 45.00 |
| | | $ 1,109.33 |

14. The employment by the debtor of Noel S. Hyde of the law firm of Nielsen & Senior and of Ken McCartney has been previously approved by order of this Court, and the fees and costs incurred by counsel for the debtor in pursuing this action are reasonable in light of all the circumstances.

## CONCLUSIONS OF LAW

1. The legal effect of the filing of the voluntary petition in each of the cases referred to above was the imposition of the jurisdiction of the United States Bankruptcy Court over the property and the affairs of each debtor, with the property in each case vested in an estate subject to administration by the debtor-in-possession who assumed the rights and duties of a trustee in each case.

2. Pursuant to 11 U.S.C. Sections 363, 1107, and 1108, the above-named debtor had the right, during the pendency of its Chapter 11 case, to continue its business without further authorization from the court.

3. The foreclosure proceedings conducted by First Security with respect to the interest of Leon J. Doan, Jr. in the business property, which proceedings culminated in the sale of said business property to First Security on June 29, 1983, were conducted pursuant to proper court authority.

■ 4. The effect of First Security's purchase of the business property at the foreclosure sale was to put First Security in possession of the mortgagor's interest in the property, but said purchase did not terminate the interest of the above-named debtor as a tenant at sufferance in the business property, nor did it give the bank the right to take any action restricted by Title 11, U.S.C. Immediately upon the purchase by First Security of the business property, the relationship between First Security and the above-named debtor became a landlord/tenant relationship, with First Security entitled to receive rent from the above-named debtor.

■ 5. The automatic stay imposed by 11 U.S.C. Section 362 prohibits any creditor from contacting the debtor, repossessing property of the estate, or interfering in any way with the debtor's business without an order from the court modifying the automatic stay. Said stay also prohibited the commencement or continuation of any action against the debtor or the debtor's property without first obtaining relief from the stay.

■ 6. Each and every act of First Security between June 29, 1983 and July 7, 1983, which resulted in the restriction or dislocation of the debtor from the business property, as well as a restriction or termination of the debtor's business, constituted an open and flagrant violation of the automatic stay imposed by 11 U.S.C. Section 362.

7. The violations of the automatic stay referred to in paragraph 6 constitute contempt of the above-named Court.

8. Any and all acts undertaken by First Security from and after June 29, 1983, with respect to the above-named debtor's business and property, which acts were in violation of the automatic stay imposed by 11 U.S.C. Section 362 are void and without any legal force or effect.

9. The case was converted to a Chapter 7 case on July 18, 1983. All the expenditures resulting from First Security's unlawful actions constituted administrative expenses in the Chapter 11 case. Upon conversion to Chapter 7 they became administrative expenses of the Chapter 7 estate.

10. The estate of debtor is entitled to a judgment against First Security in the amount of $10,886.12 for reasonable and necessary costs incurred by the debtor as a result of the prohibited acts of First Security, together with reasonable attorneys' fees and costs in the amount of $1,109.33, which were incurred in pursuing the present action.